[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR EMERGENCY CHANGE OF PHYSICAL CUSTODY
 Procedural History
On March 5, 2002, pursuant to an agreement of the parties, an order was entered granting the plaintiff and defendant, pendente lite, joint legal and physical custody of their minor children.
On April 4, 2002, the parties reached an agreement as to medical care issues and the court entered orders which provided that there were to be "no new doctors or medications for the minor children, except in emergency situations, without the written consent of both parties." On April 17, the plaintiff provided to the Guardian ad Litem a list of the children's treating physicians.
On June 27, 2002, after another agreement, the court ordered that the parties "abide by Dr. Schneider's recommendations regarding therapy for Michael and by Dr. Hen's recommendations regarding any treatment for Thomas". It also directed that there were to be no new health care providers of any sort for the minor children, except in an emergency, without written permission of the parties and the Guardian ad Litem and that if one of the parties wished to take any of the minor children to a new health care provider, that party would first contact the Guardian ad Litem, who would contact the other party. In addition, all previously-issued court orders remained in full force and effect pending further order of the court.
On September 20, 2002, the defendant moved, ex parte, for an emergency change of physical custody. The defendant claimed, inter alia, that there had been "an exigent change in circumstances in that the plaintiff has taken the minor child, Michael, to unauthorized doctors, and was feeding the child unauthorized and unknown medications in violation of the aforesaid agreements"; that the "plaintiff's continuous violations of the CT Page 13361 court orders pose a serious and immediate physical danger to the minor children", and that it was not in the best interest of the minor children to remain with the plaintiff in an unsupervised setting. No ex pane relief was granted, but counsel for the plaintiff and the minor child were contacted and a hearing with all parties and counsel commenced on that afternoon, and continued on September 23, September 24, September 25, September 30 and October 1, 2002. The court heard testimony from the parties, fact witnesses, the children's treating psychiatrist, pediatrician and naturopath, from a non-treating psychiatrist offered as an expert witness, and from the Guardian ad Litem. In addition, the court considered proposed orders from both parties, and considered the relevant statutes and applicable case law.
 FACTS
After the April 4, 2002 order that there be no new doctors or medications without the defendant's consent, on June 11 the plaintiff, without consent, brought their child Thomas to a naturopathic physician, Dr. Vishvanath, and thereafter administered to Thomas a new prescription of Pulsatilla 200c provided by Dr. Vishvanath. She also brought her son Michael, on June 26, to see Dr. Uy "for a psychiatric evaluation" and therapy. Both Dr. Uy and Dr. Vishvanath were new doctors for the children, were not included on the plaintiff's list of treating physicians, and were engaged by the plaintiff without the defendant's consent.
On June 27, 2002 another agreement was reached and a court order entered providing there would "be no new health care providers of any sort for the minor children, except in an emergency, without written permission of the parties and the Guardian-ad-litem. If one of the parties wishes to take any of the minor children to a new health care provider, that party will first contact the Guardian-ad-Litem, who will then contact the other party. . . . All other previously-issued orders shall remain in full force and effect pending further order of the court." As she had done after the April 4 order, the plaintiff, without written permission of the defendant or the Guardian-ad-Litem, took the children to new health care providers not listed on the plaintiff's April 17 list of treating physicians. She took Michael to Dr. Uy on July 9, July 23, July 30 and August 13. to Dr. Vishvanath on September 16, and to the Center for Pediatric Therapy for occupational therapy on July 8, July 22, August 1, August 8, August 15 and August 23.
Dr. Uy, on July 23, 2002 provided the plaintiff with a written recommendation for a trial of Adderall, a medication to which he had previously had an adverse reaction in October, 2001. He recommended that CT Page 13362 the plaintiff should "[s]tart Adderall 2.5mg PO BID. RTC in a week." He also "recommended baseline EKG before medication administration." It is not clear whether any of this medication was administered to the child, but at no time did the plaintiff request or receive the defendant's written consent to a psychiatric assessment of Michael by Dr. Uy or to another trial of this medication.
On June 13, 2002, Attorney Amendola, Guardian ad Litem, notified both parties that the plaintiffs taking a child to a new naturopathic doctor was "in direct violation of the last court order whereby it was agreed that neither party take the child to any new medical providers" and that if repeated, without the defendant's consent, she would "have no choice but to support a motion a contempt motion on this issue." Despite this warning, the plaintiff brought both Thomas and Michael to Dr. Vishvanath on September 16, 2002. At this visit, Dr. Vishvanath, without the defendant's knowledge, prescribed for, sold and provided to the plaintiff T. Hispanica for Michael. T-Hispanica is a homeopathic remedy which contains tarantula venom in diluted form. According to Dr. Vishvanath, T. Hispanica is an energy medicine affecting all systems of the body. Michael's pediatrician, Dr. Kurra, was unfamiliar with T-Hispanica, was unaware that it had been given to Michael and did not know of its possible affects. Dr. Vishvanath also prescribed sulphur, Omega 3 oil, calcium carb., and Licopodium (a plant in a homeopathic form) for Michael.
On June 11, 2002, Dr. Vishvanath, at the plaintiff's request, examined Thomas concerning his recurrent ear infections and asthma condition. Although her examination found Thomas's chest to be clear, Dr. Vishvanath prescribed Pulsitilla, a flower "to rebalance" him. She indicated that it worked in the same way as the T-Hispanica she had prescribed for Michael.
 LAW AND ANALYSIS
This court's authority to modify custody orders is set forth in General Statutes § 46b-56. According to Section 46b-56 (a) "the court may at any time make or modify any proper order regarding . . . custody and visitation if it has jurisdiction . . . according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable". Section 46b-56 (b) provides that in "modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . .
"[Our Supreme Court] has limited the broad discretion given the trial court to modify custody orders . . . CT Page 13363 by requiring that modification of a custody award be based upon either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child." (Internal quotation marks omitted.) Kelly v. Kelly, 54 Conn. App. 50, 55, 732 A.2d 808 (1999).
 Among the various factors the court may consider when determining the best interest of the child are the parties' parenting skills . . . The court may also take into account the recommendations of the . . . child's guardian ad litem. See Schult v. Schult, supra, 779 (the guardian ad litem is the representative of the child's best interests')." Janik v. Janik, 61 Conn. App. 175, 180, 763 A.2d 65 (2000).
The defendant claims that a change of custody is warranted because the plaintiff, in violation of court orders, brought Michael to unauthorized doctors and administered unauthorized and unknown medications and that such actions pose a serious and immediate physical danger to the children. The plaintiff's use of new doctors and new medications did violate the letter, intent, and spirit of the orders of April 4, 2002 and June 27, 2002. The plaintiff was disingenuous in her claim that she did nothing wrong because Dr. Vishvanath was a naturopathic physician and not a doctor, and because her prescriptions were homeopathic remedies, not prescription medications. The plaintiff was determined to do as she pleased as to health care issues and demonstrated her total and conscious disregard of her agreements and of court orders. Fortunately, to this point, the children have not suffered any adverse affects. At present, it is not clear that the change requested by the defendant, moving the plaintiff out of and him into the family home would be in the best interest of the children. However, it is critical for the safety, health and protection of the children, that the plaintiff understand that court orders must be obeyed and that there will be a price to pay for their violation.
 ORDERS
The court enters the following orders:
1. All previous orders of the court entered on March 5, 2002, April 4, 2002, and June 27, 2002 shall remain in full force and effect including but not CT Page 13364 limited to the order that the plaintiff shall have supervision while the children are in her care on Mondays, Tuesdays, Wednesdays, Thursdays and Fridays from 7:00 a.m. to 12:00 noon and on Mondays, Tuesdays, Thursdays from 2:30 p.m. to 8:30 p.m. and any Fridays the plaintiff has the children from 2:30 p.m. to 8:30 p.m.; and
 2. Attorney Amendola and the defendant shall have telephone access to all persons supervising the children while with the plaintiff; and
 3. The term "health care provider" shall include any person, corporation, limited liability company, facility or institution operated, owned or licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment and shall include, but is not limited to any doctor, physician, psychologist, psychiatrist, naturopathy physician, homeopathic physician, chiropractor, therapist, dentist, and optometrist and that the therapy prohibited, without consent of the defendant shall include, but is not limited to, therapy of any kind or description, including any activities designed to provide therapeutic treatment and occupational therapy, except for those services provided by Samuel Staples Elementary School; and
 4. In the event of an emergency, the plaintiff may call 911 or bring the children directly to a hospital emergency room and shall notify the defendant and the Guardian ad Litem immediately upon doing so; and
 5. The plaintiff or any person acting on behalf of the plaintiff shall not, without written permission of the defendant, administer any medication of any kind, including but not limited to prescription or non-prescription medications, herbs, homeopathic remedies or treatments, dietary and vitamin supplements; and
6. If the plaintiff seeks to take any of the children CT Page 13365 for medical treatment of any type as set forth above, the plaintiff shall notify Attorney Bonnie Amendola, in writing, and Attorney Amendola shall contact the defendant, and if the defendant and Attorney Amendola determine that said medical treatment is warranted, then the defendant will make the appointment and bring the child for said treatment.
The actions of the plaintiff necessitated extraordinary legal efforts on behalf of the defendant and by the Guardian ad Litem, and both requested payment of these fees and expenses. General Statutes § 46b-62
provides the court with authority to order payment of these fees after consideration of the parties' respective abilities and the criteria set forth in section 46b-82. See Secada v. Secada, Superior Court, judicial district of Stamford-Norwalk, Regional Family Trial Docket at Middletown, Docket No. 0174204S (Apr. 30, 2002, Frazzini, J.) The court has considered the statutory criteria including the financial resources of the parties and the regular substantial contributions received by the plaintiff from her parents for her support, her attorneys fees and the expenses of this litigation. The plaintiff is ordered pay the following:
 1. To the defendant, attorney's fees of $10,937.81. Said sum shall be paid as follows: $5,500 within 14 days of the date of this decision and the balance on or before December 31, 2002.
 2. To the defendant, $800 for the expert witness fee of Dr. D'Apice. Said sum shall be paid on or before 14 days from the date of this decision.
 3. To the Guardian ad Litem, Attorney Amendola, the sum of $4,200. Said sum shall be paid on or before 14 days from the date of this decision.
 4. Within 14 days of receipt, any and all bills of Dr. Uy, Dr. Kurra, and Dr. Vishvanath for their time in court with regard to these proceedings.
In addition, the plaintiff shall be responsible for, and shall pay, any uninsured amounts and any co-payments, for visits to Dr. Uy between June 1, 2002 and September 20, 2002, and to The Center for Pediatric Therapy-Fairfield between May 1, 2002 and September 20, 2002. Said bills shall be paid immediately upon receipt.
HILLER, J. CT Page 13366
[EDITORS' NOTE: This page is blank.] CT Page 13367